COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Coleman and Elder
Argued at Richmond, Virginia


FORMEX, INC./W. B. GOODE COMPANY, INC.
and
AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY

v.        Record No. 1493-95-2        MEMORANDUM OPINION[*]
                                      BY JUDGE JOSEPH E. BAKER
CHARLES RANDAL MILEY                       MARCH 12, 1996


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Joseph C. Veith, III (Montedonico, Hamilton &
        Altman, P.C., on briefs), for appellants.

        Laura Large Geller (Geoffrey R. McDonald;
        McDonald & Snesil, P.C., on brief), for
        appellee.


        In this appeal from a decision of the Workers' Compensation

Commission (commission) by Formex, Inc./W. B. Goode Company, Inc.

and American Guarantee and Liability Insurance Company, its

insurance carrier, (jointly referred to herein as employer), the

dominant issue presented is whether the commission erred when it

entered an award in favor of Charles Randal Miley (claimant) for

benefits effective beyond July 7, 1993 and specifically beginning

August 1, 1994 and continuing.  A secondary issue to be

considered is whether the commission wrongfully held that

claimant did not forfeit his benefits during the period December

21, 1992 to February 18, 1993.  Finding no error, we affirm the

decision of the commission.
_____
        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

We must view the evidence in the light most favorable to claimant, as the prevailing party below, and the fact that contrary evidence may be found in the record is of no consequence if credible evidence supports the commission's findings. See Manassas Ice & Fuel Co. v. Farrar, 13 Va. App. 227, 229, 409 S.E.2d 824, 826 (1991), and cases there cited. Viewed accordingly, the record discloses that employer manufactures steel curbing and bumpers. On November 19, 1992, claimant was employed with employer as a shop foreman. On that date, claimant sustained a compensable injury to his left shoulder as he and a fellow employee were moving a piece of steel curbing. Later that day, claimant was seen by Dr. John G. Cametas, who diagnosed claimant's injury as an AC joint tear of the left shoulder. Dr. Cametas released claimant for light-duty work. Claimant returned to his usual employment but found that he could not perform the duties required by his job. Employer refused to honor Dr. Cametas's restrictions to limit his work to light duty. The commission found that claimant was justified in refusing to accept employer's offer of employment which required him to perform his pre-injury duties.

The record discloses some conflict in claimant's job description. Claimant testified that he was a working foreman and would, on occasion, lift materials weighing between 200 and 250 pounds. Former co-workers, Danny Lightfoot, who now performs claimant's job, and Mike Ketchum, testified that although

claimant would occasionally help lift something, this was not a requirement of claimant's job. The commission found that claimant's job required that, on occasion, with the assistance of a fellow employee, he would lift items weighing as much as 250 pounds.

Employer did not contend that claimant forfeited his right to compensation by refusing the employment offered by employer, but rather employer contended that claimant failed to market his residual capacity by failing to make a reasonable effort to find employment within his capability. Claimant's evidence of efforts to find employment subsequent to being released to light duty on April 21, 1993 consisted primarily of a list of 152 companies that he contacted. The list was of dye cast foundries and similar companies located throughout the country, with only one company in Virginia listed. With respect to these companies, claimant presented no evidence of the contact person, when the company was contacted, what the response to the contact was, the type of position sought, or whether the company was hiring. The list contained a handwritten notation of a listing with the Virginia Employment Commission (VEC) during the period from 1992-1994. No supporting documentation from the VEC was submitted and claimant gave no testimony as to what, if any, activities he undertook in conjunction with the VEC. Claimant stated that probably one-quarter of the contacts were made after September 13, 1993, when his deposition was taken by employer.

Three weeks from the date of claimant's injury, Dr. Cametas noted no improvement in claimant's injury and referred him to Dr. Kim Sellergren, an orthopedic surgeon. Dr. Sellergren diagnosed claimant's injury as a first or second degree AC joint separation. After claimant was given MRI tests, Dr. Sellergren directed that claimant not work from December 18, 1992 to December 21, 1992. In a letter to Dr. Cametas, Dr. Sellergren wrote that claimant "should do no work requiring anything other than the lightest use (paperwork) of left arm."

On February 19, 1993, claimant underwent surgery on his injured shoulder. In June 1993, Dr. Sellergren opined that he could offer no further treatment to claimant to improve his condition; however, he then referred claimant to Dr. Richard Caspari, another orthopedic surgeon in Dr. Sellergren's group, who last saw claimant on July 7, 1993. At that time, Dr. Caspari concluded, "[w]e cannot find any evidence of biomechanical shoulder instability or reasons for this pain. We are therefore referring [claimant] to Dr. Ed Isaacs, a neurologist, to see if there is possibly a cervical disc that is giving [claimant] this problem. We do not feel that physical therapy is warranted any longer." Thereafter, Drs. Sellergren and Caspari turned over management of claimant's case to Dr. Isaacs, opining that from an orthopedic view there were no further physical restrictions and that claimant could return to work "unless further restrictions were . . . warranted by Dr. Isaacs." From that, the commission

found that as of April 22, 1994, there was no further indication of total work incapacity.

On July 21, 1993, claimant was seen by Dr. Isaacs. At that time, Dr. Isaacs stated, "I am concerned . . . that because of the surgery [claimant] cannot generate enough stable power in that left shoulder to do the heavy kind of work he had done before . . . ." After a September 7, 1993 visit, Dr. Isaacs reported, "[claimant's] major difficulties involve working with his arms extended in front of him and trying to provide some type of repetitive action which causes him increased pain and discomfort." Dr. Isaacs treated claimant until September 30, 1994 and thereafter refused to see claimant because he was not being paid for his services. Dr. Isaacs's last report made by a November 7, 1994 letter stated that when he last saw claimant, further additional services were required. The commission noted "that there was no evidence in the record that [claimant] was ever released from his light duty status." That observation is supported by the record.

The commission reviewed the evidence claimant contended showed that he had attempted to obtain selective employment suitable to his residual capacity. In its opinion, it found that evidence to be insufficient to meet claimant's burden to show he had made the required effort. For that reason, the commission declined to award benefits from April 22, 1993 to August 1, 1994, the latter date being the date claimant obtained other employment

at a wage of $200 weekly.  We find the evidence sufficient to support the commission's finding that beginning August 1, 1994 and continuing, claimant was entitled to an award of benefits for his November 19, 1992 injury.

Employer further argues that the commission erred when it held that claimant was entitled to compensation benefits between December 21, 1992 and February 19, 1993.  Employer asserts that the record fails to show that during that period, after refusing to return to his pre-injury employment, claimant sufficiently marketed his residual capacity.  Cases cited by claimant vary as to the time limit a claimant will be justified in not marketing his or her residual capacity.  We have reviewed those cases and find that a cardinal principle declared is that each case must be judged by the commission based upon its particular facts.  See National Linen v. McGuinn, 8 Va. App. 267, 380 S.E.2d 31 (1989).  In addition, on appeal, those facts must be viewed in the light most favorable to the party in whose favor the commission ruled, here that being claimant.  See Holley Farms Food v. Carter, 15 Va. App. 29, 422 S.E.2d 165 (1992).

It is obvious that between December 21, 1992 and February 19, 1993, claimant required substantial treatment.  On December 18, 1992, he underwent an MRI.  From that date, Dr. Sellergren restricted claimant from any work until December 21, 1992.  On February 19, 1993, claimant underwent surgery.  It is reasonable to assume that the surgery was being planned during the period

- 6 -

employer asserts that claimant should have been seeking selective employment. We find that a reasonable view of the evidence supports the commission's decision holding that claimant was justified in not seeking employment during the subject period.

For the reasons stated, the decision of the commission is affirmed.

<u>Affirmed.</u>